IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**ROMNEY RENTAS,**

        Petitioner,

v.                                                 Civil Action No.: 1:15-CV-195 (KEELEY)

**UNITED STATES OF AMERICA,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On October 29, 2015, Petitioner Romney Rentas ("Petitioner" or "Defendant"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On October 20, 2015, the Court entered an Order to Show Cause [ECF No. 7] why the Petition should not be granted. On November 13, 2015, Respondent filed a response to the Petition by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment [ECF No. 10]. On November 16, 2015, the Court entered an Order and Roseboro Notice [ECF No. 11], informing Petitioner of his right and obligation to respond to the Government's Motion. On December 2, 2015, Petitioner filed his Response [ECF No. 13]. Subsequently, on February 24, 2016, Petitioner filed another Motion [ECF No. 14], requesting that the Court grant the Petition. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the

undersigned recommends that the Petition be denied.

## II. **BACKGROUND**[1]

### A. Conviction and Sentence

On November 10, 2010, a three-count Criminal Complaint was filed against Petitioner. Compl., ECF No. 1. In the Complaint, Petitioner was charged in Counts One and Two with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2, and in Count Three with conspiring to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371. Id. at 3-4. Subsequently, on April 8, 2011, an Information was filed against Petitioner, dropping Counts One and Three and including only Count Two. Info., ECF No. 13. On March 20, 2011, Petitioner signed a written plea agreement, professing that he would plead guilty to the charge contained in the Information. Plea Agreement, ECF No. 16. On April 8, 2011, Judge Jerome B. Simandle held a Federal Rule of Criminal Procedure 11 ("Rule 11") plea hearing and accepted Petitioner's plea of guilty. Appl., ECF No. 17.

On January 19, 2012, Judge Simandle held Petitioner's sentencing hearing. Judgment, ECF No. 19. During this hearing, Judge Simandle sentenced Petitioner to 110 months of imprisonment, to be followed by 3 years of supervised release. Id. at 2-3. Petitioner was also ordered to forfeit, *inter alia*, a ".380 caliber semiautomatic handgun." Id. at 6. Petitioner did not file a direct appeal.

### B. Prison Disciplinary Proceedings

On April 5, 2015, a staff member of the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, drafted an Incident Report regarding Petitioner, an inmate of the

---

[1] Throughout this section, all ECF numbers refer to entries in the docket of Criminal Action No. 1:11-CR-219, District of New Jersey.

institution.[2] Pet'r's Ex. A at 1, ECF No. 1-1. The staff member reported that:

> [A]t approximately 11:30 AM, while conducting rounds on the second floor in room 240, [Petitioner] . . . had a cell phone in his hand and threw it above my head to [another] inmate. . . . [Petitioner] ran out of room 240 towards the stairs. I ordered [Petitioner] to stop but he kept running.

Id. The staff member then charged Petitioner with destroying and/or disposing of an item during a search or attempted search, in violation of the Bureau of Prisons' ("BOP's") Prohibited Act Code § 115, and refusing to obey an order of a staff member, in violation of Prohibited Act Code § 307. Id.

That same day, a copy of the Incident Report was provided to both Petitioner and the Unit Discipline Committee ("UDC"). Id. The UDC assigned a BOP Lieutenant to investigate the charges. Resp't's Ex. 2, ECF No. 10-2. During the investigation, the BOP Lieutenant interviewed Petitioner after informing him that he had the right to remain silent. Id. Petitioner told the BOP Lieutenant that "he did nothing wrong . . . [and] that the officer must [have] mistaken [him] for someone else." Id. After interviewing Petitioner, the BOP Lieutenant placed Petitioner in the Special Housing Unit and ordered that the "unit team conduct further interview on the unit in question." Id. Following the investigation, the UDC forwarded the Incident Report to the Disciplinary Hearing Officer ("DHO") and recommended that, if Petitioner was found guilty of the charges, the DHO take away Petitioner's visiting privileges and the maximum amount of good conduct time allowed. Id. at 7.

On April 9, 2015, Petitioner received notice that he would receive the next available hearing time before the DHO and was provided with a written copy of his rights regarding the hearing. Resp't's Exs. 3-4, ECF No. 10-2. On April 20, 2015, the

---

[2] Petitioner is currently incarcerated at the FCI in Hazelton, West Virginia. His projected release from federal custody is November 22, 2018. Resp't's Ex. 1, ECF No. 10-2.

DHO held Petitioner's disciplinary hearing. Resp't's Ex. 5, ECF No. 10-2. Petitioner waived his rights to a staff representative and to call witnesses on his own behalf. Id. During the hearing, Petitioner stated that he was not involved in the incident but was instead getting his hair cut on the third floor. Id. The hearing was then postponed for, *inter alia*, the witnessing staff member to "re-write [the Incident Report] for clarification [purposes]." Id.

On April 25, 2015, the Incident Report was rewritten with the added detail that the cell phone involved in the incident was black and medium-sized. Resp't's Ex. 6, ECF No. 10-2. That same day, a copy of the rewritten Incident Report was delivered to Petitioner. Id. The incident was then re-investigated by a different BOP Lieutenant. Id. At the conclusion of the investigation, the BOP Lieutenant found "the [rewritten Incident Report] to be [drafted] correctly and the charges of codes 115 and 307 to be valid," despite Petitioner's claim that he was getting his hair cut at the time of the incident. Id. On April 30, 2015, Petitioner received notice that his disciplinary hearing was being re-convened and was provided with another written copy of his rights regarding the hearing. Resp't's Exs. 7-8, ECF No. 10-2.

On May 14, 2015, Petitioner's disciplinary hearing was re-convened. Resp't's Ex. 5, ECF No. 10-2. Petitioner again waived his rights to a staff representative and to call witnesses on his own behalf. Id. During the hearing, Petitioner re-iterated that he "was getting a haircut" at the time of the incident. Id. However, "other inmates said [Petitioner's haircut had] happened an hour before [the incident]" and Petitioner was unable to recall the name of the inmate who had cut his hair. Id. Therefore, the DHO found that "[t]he act was committed as charged" and sanctioned Petitioner. Id.

Specifically, the DHO imposed the following sanctions:

> Code 115
> Disallowance Good Conduct Time: 40 days
> Disciplinary Segregation: 15 Days suspended 90 days. Suspension ends 08-11-2015
> Commissary Restriction: 30 days starts 05-14-2015 ends 06-12-2015
>
> Code 307
> Visiting Restriction: 30 Days starts 05-14-2015 ends 06-12-2015

Id.

The Hearing Report was prepared on June 4, 2015, and Petitioner was provided a copy on June 10, 2015. Id. at 16. In this report, the DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. Specifically, the DHO stated that he had relied upon, *inter alia*: (1) the rewritten Incident Report, (2) Petitioner's statements that he was getting a haircut at the time of the incident and that he could not remember the name of inmate who had cut his hair and (3) statements from other inmates that Petitioner's haircut had occurred an hour before the incident. Id. The report also included the reasons for Petitioner's sanctions. Id. To illustrate, the report provided that:

> The action on the part of an inmate to destroy or dispose of any item during a search of attempt to search creates an inability for the established pat searching policy to be successfully carried out. Otherwise, inmates who possess hazardous contraband could avoid or lessen the consequences by simply destroying or disposing of it.
>
> Disciplinary Segregation, suspended, Disallowance of Good Conduct Time, loss Commissary, and Visiting privileges, are meant to demonstrate the seriousness of the offenses to [Petitioner] as well as everyone incarcerated at this facility.

Id.

On or about June 15, 2015, Petitioner filed his first administrative appeal of the DHO's decision. Pet'r's Ex. B at 8, ECF No. 1-2. The DHO's decision was affirmed on or

about July 14, 2015. Id. at 6. Therefore, on July 27, 2015, Petitioner filed his second administrative appeal. Id. The appeal was never answered.

### III. DISCUSSION

**A. The Petition**

In the Petition, Petitioner asserts that his Fifth Amendment right to due process was violated during and prior to the prison disciplinary proceedings held on May 14, 2015. ECF No. 1 at 10. Specifically, Petitioner contends that his right to due process was violated when: (1) the staff member accused him of destroying and/or disposing of an item during a search or attempted search when the staff member was conducting rounds, not searches; (2) the UDC failed to timely refer the matter to the DHO; (3) the DHO failed to provide him with written notice of the "Greatest and High severity prohibited act" prior to his May 14, 2015, hearing and (4) he was found guilty despite being innocent of the charges against him. Id. Petitioner requests that the Court vacate the results of the disciplinary proceedings, find him innocent of any wrongdoing and reinstate his forty days of good conduct time. Id. at 8.

In his response to Motion to Dismiss or for Summary Judgment, the Petitioner raises an allegation that the re-written Incident Report violates 28 C.F.R. § 541.5. More specifically, the Petitioner alleges that this regulation does not provide for a second Incident Report to be issued. The Petitioner also asserts that the UDC failed to comply with 28 C.F.R. § 541.8 by failing to advise him of his rights at the DHO hearing and failing to forward relevant copies to the DHO with a statement of reasons for the referral. Finally, the Petitioner raises an objection to the fact that the Central Office Administrative Remedy was never answered within the 40 day time requirement set

6

forth in 28 C.F.R. § 542.18.

**B.     Legal Standards**

   **1.     Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570,

7

rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the

"mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**C.    Analysis of the Petition**

Petitioner contends that his Fifth Amendment right to due process was violated during and prior to the prison disciplinary proceedings held on May 14, 2015. ECF No. 1 at 10. Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

9

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received written notice of the charges[3] against him more than twenty-four hours before his two disciplinary hearings. Petitioner's first hearing was held on April 20, 2015, and he was provided with an Incident Report on April 5, 2015. Petitioner's second hearing was held on May 14, 2015, and he was provided with the rewritten Incident Report on April 25, 2015. Therefore, Petitioner received a copy of the initial Incident report and rewritten Incident Report more than twenty-four hours before the respective disciplinary hearings.

Second, after the disciplinary hearings, Petitioner was provided with a report of what had occurred during the two hearings, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. See Part II.B (detailing the

---

[3] Petitioner argues that the charge of destroying and/or disposing of an item during a search or attempted search is improper because, during the incident, the staff member was conducting a round, not a search. ECF No. 1 at 10. The undersigned finds that this argument lacks merit. Courts regularly uphold the charge of destroying and/or disposing of an item during a search or attempted search for prisoners' actions that occur during rounds. See, e.g., Valenzvela-Garcia v. Edenfield, No. 13-78-GFVT, 2013 WL 5739695, at *2 (E.D. Ky. Oct. 22, 2013).

information contained in the report). Third, Petitioner was afforded the opportunity to call witnesses on his own behalf during his disciplinary hearings and was able to present a defense. Fourth, although he declined to invoke it, Petitioner was instructed of his right to a staff representative during his disciplinary hearings. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges.[4]

Petitioner argues that he was denied due process because he is innocent of the charges against him. ECF No. 1 at 10. However, the results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457. In this case, the DHO found Petitioner guilty of destroying and/or disposing of an item during a search or attempted search, in violation of Prohibited Act Code § 115, and of refusing to obey an order of a staff member, in violation of Prohibited Act Code § 307. Because the statements of the staff member who witnessed the incident, contained in the initial and rewritten Incident Reports, and because statements from other inmates all support the DHO's findings, the undersigned finds that the DHO's decision is supported by some evidence.

---

[4] See 28 C.F.R. § 541.16(b).

Petitioner further argues that he was denied due process because 28 C.F.R. § 541.5 does not allow for a second incident report to be issued. Section 541.5 provides:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.
>
> (b) Investigation. After you receive an incident report, a Bureau staff member will investigate it. . . .

28 C.F.R. § 541.5. To the extent that Petitioner asserts error in the rewriting of the disciplinary report, the Court finds no basis for relief has been stated. First, there is no prohibition in Section 541.5 on preparing a revised or rewritten incident report. Here, the report was revised to provide greater clarity, and the Petitioner received it days prior to the disciplinary hearing. This sequence of events demonstrates that Petitioner had adequate notice of the revisions prior to hearing and does not suggest that he was denied due process. See Carrut v. Fondren, 2009 WL 825775, at *5 (D. Minn. 2009) (stating that the rewritten incident report that provided greater detail on charges did not deny the petitioner due process but rather provided the petitioner adequate notice and the opportunity to defend against the charges); Scott v. Martinez, 2009 WL 79041 *4 (M.D. Pa. 2009) ("Nothing in the policy of the BOP prohibits it from correcting an error or seeking more information with regard to an incident report that is written, and Scott was not prejudiced by the rewritten incident report, as it did not impair his ability to present a full defense throughout the disciplinary process.")

In addition, Petitioner's allegation that the UDC failed to advise him of his rights before the DHO and failed to forward copies to the DHO with a statement of reasons for

the referral are likewise without merit. Part II of the Incident Report sets forth the UDC action and specifically notes that it is referring the charges to the DHO for further hearing due to the severity of the charges. ECF No. 10-2 at 7. Furthermore, the Petitioner signed an acknowledgment that he had been advised of the rights afforded him at a hearing before the DHO. ECF No. 10-2 at 12.

Finally, to the extent that the Central Office failed to respond to his second Administrative Remedy Appeal, such failure does not violate the Petitioner's due process rights. Rather, the failure to respond within the time period prescribed simply permitted the Petitioner to file this action without waiting additional time for a response.[5] Consequently, the undersigned finds that Petitioner's arguments lacks merit and that the Petition as a whole should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 10] be **GRANTED**, the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED**, the Motion to Grant the Writ [ECF No. 14] be **DENIED** and the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this

---

[5] "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 541.5.

13

recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 29th day of June, 2016.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE